JOHN FRANCIS, Appellant, v. J. B. GROTE ET AL., Respondents.

November 20, 1883.

1. LIMITATIONS — TAXES — EJECTMENT. — Under the limitations imposed by the revenue law of 1872, a recorded tax deed is, after the lapse of three years, a bar to an entry in an action of ejectment against the purchaser at tax sale, unless such sale is absolutely void.

2. TAXES — EJECTMENT. — It is immaterial, in an action of ejectment begun by the original owner against the purchaser at tax sale, more than three years after the tax deed has been recorded, that the tax deed recites facts which render it voidable.

8. CONSTITUTIONAL LAW — TAXES. — A revenue law which provides for a judgment for taxes without personal service upon the owner of the land and for summary proceedings to collect the same, is not necessarily unconstitutional.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Affirmed.*

FINKELNBURG & RASSIEUR, for the appellant : A tax sale of several lots in one proceeding is void. — *Keene* v. *Barnes*, 29 Mo. 377 ; *State* v. *Richardson*, 21 Mo. 420 ; *Yankee* v. *Thompson*, 51 Mo. 234. If it appears that the law has not been strictly followed the tax deed conveys no title. — *Donohoe* v. *Heidel*, 33 Mo. 335; *Dunlap* v. *Henry*, 76 Mo. 106 ; *Ewart* v. *Davis*, 76 Mo. 129. If the deed on its face shows that the sale was void, the record can not give it a vitality which it did not in itself possess, and hence the

special limitation provided for in sections 221 and 222 never went into operation. The record of such a deed is a nullity. — *Stevens* v. *Hampton,* 46 Mo. 404 ; *Bishop* v. *Schnieder,* 46 Mo. 472 ; *Musick* v. *Barney,* 49 Mo. 458 ; *Moore* v. *Brown,* 11 How. 414.

M. W. HUFF, for the respondents : If one holds under a tax deed for three years after the same is recorded, and no suit is brought to set the same aside, his title is perfect, and can no longer be affected by the claim of former owners. — *Knox* v. *Cleveland,* 13 Wis. 245 ; *Draw* v. *Early,* 15 Wis. 100 ; 17 Wis. 174 ; 29 Wis. 152 ; *Bowman* v. *Cockrill,* 6 Kan. 311 at 322 ; *Maxon* v. *Houston,* 22 Kan. 643 ; 27 Kan. 190 ; 28 Kan. 828 ; *Thomas* v. *Seckles,* 32 Iowa, 71 ; 34 *Id.* 262 ; 41 Iowa, 435 ; *Bullis* v. *Marsh,* 56 *Id.* 747.

BAKEWELL, J., delivered the opinion of the court.

This was ejectment for a lot in the city of St. Louis. The answer was a general denial ; defendant further set up in his answer that he was rightfully in possession under a tax deed executed and delivered to him under the revenue law of 1872.

On the trial it was admitted that both parties claimed under the city of St. Louis. Plaintiff offered in evidence a deed from the city to him. Defendant offered the tax deed to him, dated July 29, 1875, recorded August 5, 1875. This was admitted against plaintiff's objection. Defendant offered evidence tending to show that he had been in possession under his deed since 1877. The trial was without a jury, and the finding and judgment were for defendant. The deed by the collector to Allen is in the form prescribed by the then existing law (Acts 1872, Adj. Sess., p. 128, sect. 218), for deeds by the collector, of lands sold for taxes. The deed described, as the property sold, lots 13 and 14, of block 2, city commons, block 1470, assessed for the year 1871 to Koenig and Morehead, and for 1870 to Koenig,

*also*, lot 16, block 42, of city commons, block 1554, assessed for the years 1870 and 1871 to John Francis, this last lot being the property in controversy. The deed recites that judgment was obtained against these tracts in the county court of St. Louis County, at the August term, 1872, for $45.55, being the amount of taxes, penalty, and costs assessed on these tracts for the years 1870 and 1871, recites the special execution and the sale thereunder by the collector on October 24, 1872, and the purchase of the lots by defendant at that sale at the price of $45.55 for the entire tract described, which was the least quantity bid for, and proceeds according to the prescribed form.

The law of 1872 prescribes that the judgment of the county court upon the delinquent tax list shall be entered against the several tracts or lots in the list, and that the decree shall be, that "the several tracts and lots, or so much thereof as shall be. sufficient of each of them to satisfy the amount of taxes, interest, and costs annexed to them severally, be condemned and sold to satisfy the same, as the law directs." Sect. 193. The act requires that each lot shall be chargeable with its own taxes, no matter who is the owner (sect. 204); and provides for separate proceedings and separate sales as to each lot. Sects. 135, 196, 199, 200. The law provides for notice by publication of the delinquent list (sect. 184), which is to be notice of application to the county court for judgment, and of the sale by order of court, and that the assessment and advertisement are to be taken to impart notice to the owner. Sect. 204. The judgment of the county court and order of sale, are to have the same effect as a judgment of the circuit court (sect. 194); and the act provides for appeal to the circuit court by any person aggrieved (sect. 195); and the sales are. to be as valid and effective as sales under execution by the sheriff on judgments of the circuit court. Sect. 196. The deed is to be *prima facie* evidence that the provisions of the law have been complied with. The

act further provides (sects. 222, 223), that any suit against the tax purchaser for the recovery of the lands sold for taxes, or to defeat such a sale, except where the taxes have been paid, or the land was not taxable, or has been redeemed, shall be commenced within three years from the time of recording the deed, saving their rights to infants and lunatics ; and that (sect. 223) any person recording a tax deed in the proper county shall be deemed to have set up such a title to the land described in it, as shall enable the person claiming to own the land, to maintain an' action for recovery of the land against the grantee or those claiming under him.

1. The special statute of limitations embodied in the revenue law of 1872, and set out above, would be no protection to a purchaser at a tax sale, if it were to be held not to operate in case of a voidable sale for taxes. If the sale and deed by which the defendant purchased were absolutely void, then he was not a purchaser at a tax sale, and the limitation does not apply to his case ; but if the sale was irregular to such a degree that it might have been avoided by timely proceedings, then the case is precisely that provided for by the two hundred and twenty-second section.

If the sale had been made by a constable, or before the date prescribed in the revenue law, the sale would have been absolutely void,·and in no proper sense a tax sale. But here the recitals in the deed show jurisdiction, the judgment required by law, execution on the judgment, and a sale by the proper officer at the time prescribed by law, and after the notice prescribed by law, and in the place prescribed by law. The sale of three lots assessed to two persons in a lump was illegal, and, as the supreme court held of a similar tax sale (*Keene* v. *Barnes*, 29 Mo. 384), could not be sustained. But we do not regard it as absolutely void. The collector's deed gave a colorable title. It is impossible, without construing away the law, to hold

that the legislature intended that a collector's deed for
taxes should be held to be absolutely void upon its face
when offered by the defendant in ejectment, merely because
it appears from its recitals that the sale had been made
contrary to law in some important particular.   The deed
might have been bad upon its face, if offered within three
years, and yet good enough after the time of limitation.
The question is not as to its validity as an element of good
title *per se;* but whether in connection with three years'
possession by the defendant who claims under it, it shows
color of title for a sufficient length of time to bar entry by
the plaintiff.   In the case of *Pillow* v. *Roberts* (54 U. S.
472), which arose upon a similar statutory provision in
Arkansas, but which is not precisely on all fours with the
case at bar, because it does not appear that the deed offered
was so gravely defective as the one under consideration,
Judge Grier says: " But assuming these deeds to be irreg-
ular and worthless, the court erred in refusing to receive
them in evidence in connection with proof of possession in
order to establish the defence under the statute of limita-
tions.   *   *   *   The thirty-fifth section of the statute of
Arkansas provides that all actions against the purchaser for
the recovery of lands sold by any collector of revenue for
the non-payment of taxes, shall be brought within five
years after the date of such sales, and not after.   Stat-
utes of limitation are founded on sound policy.   They are
statutes of repose, and should not be evaded by a forced
construction.   The possession which is protected by them
must be adverse and hostile to that of the true owner.   It
is not necessary that he who claims their protection should
have a good title, or any title but possession.   *   *   *
Statutes of limitation would be of little use if they pro-
tected those only who could otherwise show an indefeasi-
ble title to the land.   Hence color of title, even under a
void and worthless deed, has always been received as evi-
dence that the person in possession claims for himself, and

of course adversely to all the world.   *   *   *   In order to entitle the defendant to set up the bar of the statute after five years' adverse possession, he had only to show that he, and those under whom he claimed, held under a deed from a collector of the revenue, of lands sold for the non-payment of taxes.   He was not bound to show that all the requirements of the law had been complied with, in order to make the deed a valid and indefeasible conveyance of the title.   If the court should require such proof before a defendant could have the benefit of this law, it would require him to show that he had no need of the protection of the statute, before he would be entitled to it.   Such a construction would annul the act.''

In Iowa it has been held that when no sale has been had, that fact might be shown to avoid the tax deed, though the bar of the statute had apparently attached.   There, of course, there was no '' purchaser at a tax sale.''   But in that state, and in other states having statutory provisions similar to those of the revenue law of 1872 under consideration, the case just cited from the supreme court of the United States has been followed.   In Kansas it has been held that, where the proceedings were fatally defective for misdescription of the land on the assessment roll and sale certificate, this could not be shown after the bar of the statute had attached, to impeach the deed.   *Maxon* v. *Huston*, 22 Kan. 643.   The language of the Kansas statute (2 Kan. Stats., sect. 5495), is identical with that of the Missouri section 222, except that '' five '' is changed to '' three.''   In *Bowman* v. *Cockrill* (5 Kan. at p. 330), it is said that irregularities that would render a tax deed void before the statute of limitations has run in its favor, can not be invoked against the deed after the bar has attached. In Iowa, where the statute is as with us, it has constantly been held that it operates as a bar in all actions based upon irregularities in the sale or defects in the tax deed.   *Thomas* v. *Seckles* (32 Iowa, 71), and *Douglass* v. *Tullocks*

(34 Iowa, 262), are cases in which the deed showed on its face that several tracts were illegally sold for a gross sum, as in the case at bar. In Arkansas an invalid tax deed, with proof of actual possession during the period of limitation, is held sufficient to bar entry by the plaintiff. Cases in other states on like statutes are cited in respondent's brief to the same effect.

2. It is objected that the provision is unconstitutional as applied to sales under the law of 1872, as there is no notice, and the tax debtor has not his day in court. But there is nothing in the objection. It has never been held that any revenue law was unconstitutional on the ground that it made no provision for personal service on the owner of the land sold for taxes.

In Tennessee, Ohio, Indiana, and Illinois, statutes have been in force authorizing the collector to apply for judgment against the lands of delinquent tax payers on notice in a newspaper of his intention to do so, and the court was authorized on this notice to render judgment for taxes, and order a sale of the land, as under our law of 1872. And these summary tax laws are held to be constitutional. They must be held so, from the exigencies of the case. If the government were required to give personal notice and proceed according to the usual forms of the common law to collect its taxes, it might have great difficulty, and in many cases find it impossible to do so. *McCarroll* v. *Weeks*, 2 Over. 215; *Murray* v. *Hoboken Land Co.*, 59 U. S. 272. "It is conceded," says Judge McGirk, in *Morton* v. *Reeds* (6 Mo. at p. 74), "that the collection of taxes can not in general be made by ordinary suits. Of necessity the proceeding must be summary and *ex parte*." The departure, from the ordinary processes of the common law, provided by its beneficent care that no man's property should be taken from him without giving him a fair hearing, does not seem to be wide or grievous where the tax payer has notice by publication with a description of

his land, where the payment of taxes is an annual duty recurring at a fixed period, the neglect of which alone can imperil his property, where there is a right of appeal, a right to redeem during a long period, and a right to set aside the sale for irregularities which can not be barred by limitation, except where the property owner has been utterly careless during a period years, of asserting his rights.

We think that the judgment of the circuit court was correct, and with the concurrence of all the judges, it is affirmed.