JAMES V. GULLEY et al. v. VICTOR WAGGONER et al., Appellants.

### Division One, March 3, 1914.

1. **PLEADING: Limitation: Where Statute is Simply Bar to Suit.** Where the particular statute of limitations is merely a bar to the suit it is necessary that it be specially pleaded in order to be available as a defense. The statute of limitations of three years, fixed as the time within which a suit against purchasers at tax sales is to be brought, must be pleaded if relied on as a defense. Besides, that statute will not be a bar unless the proof shows that the plaintiffs had reached their majority two years before the bringing of the suit.

*Held,* by LAMM, J., in a concurring opinion, with whom WOODSON, J., concurs, that Sec. 11506a, R. S. 1909, which was a part of the Revenue Act of 1872, Laws 1872, sec. 221, and omitted from the Revised Statutes for thirty years, and brought to light in the Revised Statutes of 1909, on the theory that it was live law, as held in Bird v. Sellers, 122 Mo. 23, is out of harmony with the revenue scheme set forth in the Act of 1877, and is not applicable to suits involving tax titles as set forth in that revenue scheme in vogue since 1877, and should not by indirection through implication be treated with judicial toleration.

2. **TAX DEED: Notice of Adverse Possession.** Where defendant relies on a tax deed based upon a proceeding brought against the record owner, the plaintiff is entitled to show notice of his title growing out of his open and hostile possession of the property for the statutory period; and if that showing establishes the fact that defendant knew that plaintiffs were the real owners and had been in actual adverse possession for the requisite period, he cannot be adjudged to be the owner, although he is the grantee in the tax deed.

3. ——: ——: **Facts of This Case.** Where the evidence showed that Girdin J. Rushin was the record owner; that after his death his daughter remained in possession of the land for twenty years, and for about sixteen years immediately before her death lived upon it with her husband and asserted title and ownership to it adversely and openly, and paid all the taxes and exhibited receipts therefor from the collector; that after her death, leaving the plaintiffs as her minor children and heirs, her husband continued to occupy it for a year, and then turned it over to her cousin to look after, and moved to Illinois, and while the cousin was in possession, suit for taxes was brought against her father "Girdin J. Rushin and his unknown heirs and devisees" and sold under execution to defendant, and he at the trial testified that he knew the heirs to the land, he cannot be held to have acquired the title as against the plaintiffs. Actual and notorious possession by plaintiffs' mother was sufficient to put the purchaser on inquiry to ascertain what the assessor and collector knew, that the taxes had been assessed against the mother for many years, and paid by her.

*Held,* by LAMM, J., in a concurring opinion that, as said by him in Adams v. Gossom, 228 Mo. l. c. 581, the proposition that an ancient adverse possession, abandoned and not kept up, and which once may have created title, is sufficient without more to put a purchaser at a tax sale on inquiry, is a doubtful one.

4. ———: **Refund of Taxes Paid.** Where the evidence shows that the purchaser under the invalid tax deed has received much more in rents and from the use and occupancy of the land than he has expended for all purposes, a judgment for plaintiffs which does not allow him for taxes paid since he took possession will not be reversed or the cause remanded.

*Held*, by LAMM, J., with whom WOODSON, J., concurs, that rents should not in such case be offset against taxes, and the judgment should be so amended as to permit them to be recovered by defendant, according to the Act of 1903, Laws 1903, p. 254, R. S. 1909, secs. 11508 and 11509.

Appeal from Butler Circuit Court—*Hon. Jesse C. Sheppard,* Judge.

AFFIRMED.

*Henry N. Phillips* for appellants.

(1) The judgment is for the wrong party, for the reasons: (a) The cause of action herein, was barred by the Statute of Limitations. Sec. 11506a, R. S. 1909; Laws 1872, p. 130, sec. 222; Bird v. Sellers, 122 Mo. 23. (b) The sheriff's deed was made and recorded in October, 1904, and this suit was instituted January 28, 1909, nearly five years thereafter. (c) The testimony shows that James R. Gulley, the second husband of Ruth Rushin, had abandoned the land for at least ten years before the institution of this suit; and that when Poore bought it, at the tax sale, and went into possession, it had been abandoned. (d) It was sold for taxes for the years 1900 and 1901. (2) The court erred in not holding that plaintiffs had no right, estate or title in and to these premises. (a) The deed from Brannum and wife, was to Girdin J. Rushin, and not to Jordan J. Rushin. (b) The plaintiffs claim to be heirs of Jordan J. Rushin, and not of Girdin J. Rushin. The record shows, and the deed, that the conveyance from Brannum was to Girdin J. Rushin, and not to Jordan J. Rushin. (c) The suit at the sale, of which Poore purchased, was against Girdin J. Rushin, his unknown heirs, and his unknown devisees. (d) The

testimony shows that long before the institution of this suit, James R. Gulley had taken the heirs of Ruth Rushin to Illinois, and they were unknown to the assessor and the collector. (3) It is a condition precedent, to the maintenance of an action in ejectment, or any other action for the determination of a title to, or for the possession of land, that the plaintiff therein shall in his petition offer to refund to the defendants therein, against whom such recovery is sought, all taxes paid by the defendant, or other persons. Sec. 11508, R. S. 1909; Laws 1903, pp. 254-255; Manwaring v. Lumber Co., 200 Mo. 718. The tax receipts, to which there was no objection on the part of the plaintiff, show that the defendant had paid out considerable money in the way of taxes, as well as costs of the tax proceedings, and in making up the judgment the court paid no attention to them whatever. The court, in rendering its judgment, could not certainly have offset the rent of the land from the time of Poore's occupancy, say, January 1, 1905, to January 1, 1909, as the evidence clearly shows that Poor had improved the land more than the testimony shows the rental value to be. It is clearly an oversight on the part of the court, and to which its attention was called by the motion for a new trial. (4) The collector in bringing a back tax suit is only required to sue the record owner. R. S. 1909, sec. 11498; Stuart v. Ramsey, 196 Mo. 414. (5) While it is true, in a suit for taxes, brought against the record owner, that the purchaser at the tax sale does not take the title, if he had actual notice, at the time of the sale and conveyance to him by the sheriff, that such apparent owner was not the real owner, yet that cuts no figure in this case, as there was no evidence to show that Poore had any reason to believe anything but that the sale was against the right owner, and in good faith, which was the real truth. Zweigart v. Reed, 221 Mo. 33.

*Whaley & Ing* and *B. J. Puckett* for respondents.

(1) The cause of action was not barred by limitation under Sec. 11506a, R. S. 1909. This section was not thought of nor was it known to be in existence, or mentioned by either side during the trial. The question was not passed upon by the court, nor pleaded by the defendant, and even if it should have been, it is not available in this case on account of one of its provisions, i. e., that minors shall have two years after the removal of their disabilities in which to begin suit, and the undisputed evidence shows that at the time of filing the suit, the plaintiff, James V. Gulley, was but 22 years old and the other two plaintiffs were younger. (2) Even if they were not minors this could not be urged on appeal for the reason that it was not before the court during the trial, was not pleaded nor passed upon by the trial court. The limitation pleaded was the ten-year statute and not Sec. 11506a, R. S. 1909. The place was not abandoned. Plaintiffs' good faith was shown by the payment of all the taxes up until Jan. 6, 1900, and shortly after this, taking these children to Illinois and leaving their relative, James Brannum, to look after the property for them. (3) The record shows beyond the possibility of a doubt that Ruth Gulley had continuous, open, notorious, exclusive and adverse possession of the premises in controversy from about 1879 until her death. That plaintiffs are her only heirs; that they continued to live thereon thereafter with their father until taken by him to Illinois, and the record shows that the father was on the premises and paying taxes Jan. 6, 1900. (a) There is no possession shown in defendant Poore until the fall of 1904, after he got the tax deed. (b) This property was sold for taxes as the property of Girdin J. Rushin, his unknown heirs and devisees. Plaintiffs are not the heirs of Girdin J. Rushin, and were not shown so to be. They are the only heirs of

Ruth Gulley, deceased, and claim title only through her. (4) The court in rendering its judgment offset the rents and damages against the taxes, interest and costs paid by defendant Poore, and consequently did not mention in the judgment the taxes, interest and costs nor did it mention the rents and profits from the rendition of judgment until the possession of the premises were delivered to the plaintiffs, as prayed for in their petition. (a) If any one was injured by this action of the court it was the plaintiffs and not the defendant. The evidence clearly shows that while Poore only claimed to have paid $71.63, as pleaded in his answer, for taxes, interest and costs for which he asked judgment, the evidence shows that he got out of Waggoner the sum of $100 net for the farm, also that when he took possession of the land he rented the house alone for $1.50 per month. This is defendant's own testimony given by himself. And $1.50 per month from October, 1904, when Poore took possession, to the 26th day of May, 1909, the date of trial, would be 55 months or a total of $82.50. This alone was more than Poore's claim. (b) The greater weight of the evidence shows the rental value of the premises to be not less than $5 per month or $60 per year, and the court in its judgment fixed no monthly rental value of the premises from the rendition of the judgment until possession of the premises was delivered to the plaintiffs as prayed for in their petition.

## STATEMENT.

This is an action of ejectment brought for eighty acres of land. The plaintiffs are the only heirs at law of Ruth Gulley *nee* Rushin, whose father acquired title to the eighty acres of land in dispute through a warranty deed in September, 1858, from James Brannum, who was the patentee of the land from the United States.

His daughter Ruth was twice married. After the death of her first husband she was married in 1883 or 1884 to James R. Gulley. She died about 1899, leaving the three plaintiffs, the fruit of her last union, as her only heirs at law. She went into possession of the land in suit some years after the death of her father and except for a few months, resided on it from 1879 until her death in 1899. About a year after her death her husband took the plaintiffs, who were then minors, to Illinois, having put the land in charge of one Brannum, the son of the original patentee and the cousin of his deceased wife. The husband paid all the taxes on the land until he left the State and exhibited a chain of tax receipts up to the sixth of January, 1900, inclusive. In 1904 the land was sold in a proceeding against "Girdin J. Rushin and his unknown heirs and devisees," and purchased at the tax sale by defendant J. F. Poore, who then sold it to his codefendant Waggoner, who subsequently reconveyed to Poore, and remained on the land as Poore's tenant.

This action was begun in January, 1909. The defendants by their answer admit possession of the premises, the defendant Waggoner as tenant, and Poore claiming to be owner under the sheriff's deed. Defendant Poore also pleaded the ten-years Statute of Limitations based on adverse possession, and pleaded further the payment of taxes by him from 1904 up to the bringing of the action and asked judgment and a lien therefor "if defeated in this action." During the progress of the trial plaintiffs were permitted to amend their petition by tendering the defendant the taxes claimed in his answer.

The evidence showed that in the transaction whereby defendant Poore regained the title to the land from his codefendant Waggoner, he returned Waggoner $100 of a cash payment of $200 which Waggoner had made to him. The evidence further showed that

Gulley v. Waggoner.

in the deed to the grandfather of the plaintiffs, he was described as *Girdin* J. Rushin, but he seems to have been called by his neighbors *Jordan* J. Rushin.

The case was tried by the court upon the waiver of a jury and judgment rendered for plaintiffs for one cent damages, from which defendants have appealed and assigned various errors, which, so far as material, will be discussed in the opinion.

## OPINION.

### I.

BOND, J. (After stating the facts as above.)— The first point made for appellant is that this action

Limitations:
Pleading.

is barred by the Statute of Limitations of three years, fixed as the time within which suit against purchasers at tax sales must be brought, barring certain exceptions and the rights of minors to sue within two years after the removal of their disability. [R. S 1909, sec. 11506a.]

There are two answers to this contention. (1) This particular statute was not pleaded, and while the general statute of ten years was pleaded and could have been relied upon even under a general denial, since, if sustained by the proof, it would create an indefeasible estate in fee (Nelson v. Brodhack, 44 Mo. l. c. 600; Watt v. Donnell, 80 Mo. l. c. 198), and therefore, would disprove plaintiffs' title, and, hence, fall within the scope of the issue made by a general denial; yet in other cases where the particular statute of limitations is merely a bar to the suit, the rule is uniform that such Statute of Limitations must have been specially pleaded to be available. That was not done in this case. (2) The proof did not show that the plaintiffs had reached their majority two years before the bringing of this suit. For these reasons we overrule this assignment of error.

II.

The only error assignable on this appeal is that the judgment is for the wrong party, for no instructions were asked or given on the trial of the case, and no other exceptions are saved. We think that the judgment is well sustained by the proof.

The evidence showed without dispute that the mother of the plaintiff, Ruth Gulley, had for twenty years lived on the land, and for about

**Limitations:**
**Tax Suit: Actual**
**Owner Known.**

sixteen years immediately before her death, had lived there with her husband and asserted title and ownership to it openly, notoriously, continuously and adversely to the entire world, and paid all the taxes and exhibited the receipts therefor from the collector; that after her death her husband, after remaining a year, turned over the land to her cousin, in which condition it remained for two or three years when it was sold for taxes and purchased by defendant. None of the plaintiffs were made parties to that proceeding. They were minors at the time and the collector, instead of suing the parties as the heirs of their mother, brought his action against "Girdin J. Rushin and his unknown heirs and devisees," although the collector had actual knowledge, from the receipts given by him for taxes paid, that the land in question was owned or claimed by Ruth Gulley, the mother of the plaintiffs.

Waggoner, the tenant of his codefendant Poore, testified that he knew the heirs to this land. Poore, while in the witness stand, refrained from testifying whether he knew of their ownership. It has been expressly ruled in Watt v. Donnell, supra, that when the tax title is sought to be upheld against a title based on adverse possession, the defendant is entitled to show notice of his title growing out of his open and hostile possession of the property for the statutory period. In the language of the opinion, "His long continued and notorious possession standing for no-

tice.'' Under that rule, the adverse possession of plaintiffs' mother affected the purchaser at the tax sale with notice of plaintiffs' ownership. This constructive notice brings this cause within the doctrine laid down in Zweigart v. Reed, 221 Mo. l. c. 44, where, in discussing a tax deed based on a proceeding brought against the record, but not the real, owner, GRAVES, J., said: ''And further, if he had such notice as would have placed a prudent man upon inquiry as to the facts, and such inquiry would have revealed the fact that the real owner had not been sued, then he would be in the same position as if he had actual knowledge of the fact. In fact, such would be construed in a court of equity to be actual notice.'' To the same effect is Stuart v. Ramsey, 196 Mo. l. c. 416.

In this case the record owner ostensibly sued, had been dead for fifty years, the assessor and collector had positive knowledge for the last twenty years of that period, that the mother of the plaintiffs and her husband were in adverse possession of the land and claiming to own it, and paying the taxes regularly assessed against them on said land, and notwithstanding this knowledge, he did not join any of the plaintiffs as parties to the tax proceeding. The fact of the ownership of plaintiffs was within the knowledge of all persons residing in the neighborhood of the land, was admitted by the tenant (Waggoner), whom the tax purchaser put upon the land. The slightest inquiry on the part of the tax purchaser would have revealed it to him since it was common knowledge in the vicinity and was disclosed in the records of tax assessments and payments in the collector's office. It is plain that the purchaser had full opportunity to acquaint himself with the fact that the taxsuit had not been brought against the present owners of the land. Said BLACK, J., in speaking for this court, ''Notice 'is actual when the purchaser either knows of the existence of the adverse claim of title or is conscious of

having the means of knowledge, although he may not use them.' " [Sensenderfer v. Kemp, 83 Mo. l. c. 588.]

In our view the defendant Poore was sufficiently put upon his inquiry by the facts shown in this record and therefore in legal intendment had actual notice that the owners of the land, by a title which ripened into a fee by adverse possession of more than twenty years, had not been made parties to the tax suit under which he bought and therefore his deed must be held subject to their rights.

## III.

The appellant insists the court made no allowance to him for the taxes paid since he took possession of the land. The evidence showed that he had expended in all about eighty dollars and had received much more than that from his tenant Waggoner and from the use and occupancy of the land. We do not think under these circumstances there is any necessity for remanding the case. The judgment is affirmed. *Woodson, P. J.,* and *Lamm, J.,* concur in result in separate opinion by *Lamm, J. Graves, J.,* concurs in result.

**Reimbursement for Taxes Paid.**

## CONCURRING OPINION.

LAMM, J.—Section 11506a, Revised Statutes 1909 (a part of a former, 1872, revenue scheme), was left out of our revisions of 1879, 1889 and 1899 on the theory it was repealed. In Bird v. Sellers, 122 Mo. 23, decided in 1894 by Division One, this Division held it was not repealed. In making that pronouncement this Division overruled the whole court on the same point (Blodgett v. Schaffer, 94 Mo. l. c. 672), and without sending the case into Banc, where it should have gone for reconcilement in order that this court might not speak with a double tongue. The to-be-expected

**Tax Deed: Limitation Statute: Void.**

mischief happened; for on the authority of the Bird-Sellers case the last revisor reprinted said statute as live law, and it makes its new appearance in this case to be dealt with after an absence of thirty years. That section is a special statute of limitations of three years' in suits against tax purchasers, their heirs and assigns. The principal opinion in the instant case, in paragraph 1, deals with that section in terms impliedly making it applicable if pleaded (and if its provisions tolling its terms in favor of minors are observed) to suits against tax purchasers under the present revenue scheme passed in 1877—a scheme built on different lines in fundamental particulars.

I do not agree to that implication, and deem the question too important to let such implication be written as the law without respectful and earnest protest.

That the two schemes for collecting back taxes and protecting purchasers cannot stand together is certain, and it is plain to me that the proper interpretation of the 1877 act results in causing the section brought to light by our revisors to perish by construction under well known rules of legal hermeneutics. But it is not necessary to say anything on the question whether the section was in fact and technically "repealed." Let it be reserved until reached as a deciding point, if ever, in some case arising on some tax sale made under the revenue scheme of 1872. All necessary to say for the purposes of this concurring opinion is this: That special Statute of Limitation is not applicable, in my opinion, to suits (as this one is) involving tax titles under the revenue scheme in vogue since 1877, to-wit, of enforcing tax collections by suits, summons, actual or constructive service, judgments, special executions, sales thereunder and deeds following such sales. Even Bird v. Sellers, *supra*, recognizes the view just expressed (p. 32). And Bartlett v. Kauder, written by the same learned judge

who wrote the Bird-Sellers case, directly so held. [97 Mo. l. c. 361.]

There is another section, part and parcel of the same abandoned revenue scheme, section 11507, now encumbering our general statutes. The two sections (with others) were companions in number and in aid of the same legislative thought. One was section 221 and the other section 222 of the old revenue act (Laws 1872, p. 80). It has been ruled that section 11507 is also *functus officio* so far as applicable to the revenue act of 1877. [Burkham v. Manewal, 195 Mo. l. c. 508.] I cite the last case as persuasive *arguendo*.

For a generation we have been deciding tax title cases on the theory that a ten-year (not a three-year) statute governed. Were all the array of cases so decided lapses into an unbroken chain of inadvertence and (more yet) unsoundness? I am not willing to lightly unsettle a rule of property, even by indirection through implication, and therefore dissent from the reasons given for denying the application of the three-year statute in this case. I put my concurrence in the result on the ground that the statute does not apply to tax sales under laws governing them since 1877. The heresy that the three-year statute is applicable should not be treated with judicial toleration, as if by way of confession and avoidance (as here), but as a snake in the grass to be not only scotched but killed out of hand.

In 1903 an act was passed making taxes paid by tax purchasers recoverable when tax titles failed and when pleadings were drawn to that end. [Laws 1903, Reimbursement for Taxes Paid. p. 254; R. S. 1909, secs. 11508 and 11509.] That law was in force when the tax sale was made in the instant case, hence it applies here. [Haarstick v. Gabriel, 200 Mo. 237; Burkham v. Manewal, *supra*.] In this case the pleadings tendered on one hand (and claimed on the other)

255 Mo. 40

taxes paid. I think the judgment should be amended here so as to encompass a recovery of them by Poore. Rents should not be offset against them, as the principal opinion seeks to do. The case was ejectment. Plaintiffs sued for possession *and rents*. Presumably they recovered their rents in this judgment. At least they did not appeal, and to allow taxes paid to be offset on appeal against rents accrued is either to make two payments of rents, or is to ignore a tender and a palpable lapse in legal right in the judgment below. The judgment ought not to be reversed, but should be modified as to taxes and so entered here. [Mangold v. Bacon, 249 Mo. l. c. 50.]

I agree that the Statute of Limitations creates title, is a sword and shield both. I agree that one who has so acquired title and is in open possession exercising acts of ownership is in a position where his actual and notorious possession puts a purchaser on inquiry. That doctrine is announced in the cases cited by my brother. In this case, too, there seems to be actual notice. But some of the broad language of the opinion may be held to mean that the echo of an ancient possession, abandoned, or not kept up, and which may have once created title, is sufficient without more to put a purchaser on inquiry. When I wrote Adams v. Gossom, 228 Mo. l. c. 581, *et seq.*, I had doubts on that proposition, and still entertain them. Hence I desire to be marked as saying nothing thereon in this case.

Subject to the modifications suggested, I concur.

*Woodson, P. J.,* agrees to these views.